U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 28 2010

CLERK, U.S. DISTRICT COURT
By _____
         Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:10-CV-379-A |
| | § | |
| UNITED TRANSPORTATION UNION, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

For the reasons set forth in this memorandum opinion, the court has concluded that the dispute giving rise to this action is a minor dispute under the Railway Labor Act ("RLA"), with the consequence that all relief sought by plaintiff, BNSF Railway Company, should be granted, and all relief sought by defendant, United Transportation Union, should be denied.

I.

Pertinent Facts

The pertinent facts, which are contained in the Stipulation of Facts filed by the parties on July 14, 2010, are as follows:

Plaintiff operates a rail transportation system in interstate commerce and is a "carrier" as defined in section 1 First of the RLA. Defendant is the collective bargaining

representative for plaintiff's conductors and trainmen. Plaintiff and defendant are parties to various collective bargaining agreements governing the rates of pay, rules, and working conditions for plaintiff's employees represented by defendant.

On or about May 19, 2010, plaintiff's vice president, transportation, Gregory C. Fox, sent a letter to defendant's general chairpersons stating that plaintiff planned to offer monetary incentives to defendant's members working at locations in the Midwest Seniority District to encourage them to relocate to other locations where additional train service employees were needed. On May 20, 2010, defendant's general chairpersons representing employees on the former Chicago, Burlington & Quincy Railroad Company ("CB&Q") and St. Louis-San Francisco Railway Company ("Frisco") portions of plaintiff's property wrote letters to plaintiff expressing their belief that plaintiff did not have the right to offer such relocation incentives to defendant's members on the CB&Q and Frisco portions without first obtaining an agreement from defendant.

The offering of relocation incentives by plaintiff to its conductors and trainmen is not a new thing. Plaintiff offered similar incentives to employees represented by defendant in 1995

and 2007.[1]  Both times it did so without obtaining an agreement from defendant.  Defendant objected to the 2007 offering as a unilateral change in working conditions; however, the parties submitted the dispute to a special adjustment board, which ruled that plaintiff was within its managerial discretion to offer the incentives without first obtaining defendant's consent.  Neither the 1995 offering nor the 2007 offering involved the CB&Q or Frisco portions of plaintiff's property.  The only time plaintiff offered relocation incentives to its employees on the CB&Q and Frisco portions of its property, it obtained defendant's agreement through a Letter of Understanding signed by two of defendant's general chairpersons.  However, that letter expired by its terms on August 1, 2008, and was not renewed by the parties.

II.

Contentions of the Parties

Plaintiff contends that the dispute over the right to offer relocation incentives to defendant's members on the CB&Q and Frisco portions is a "minor" dispute subject to mandatory

---

[1] The 1995 offering was made by the former Atchison, Topeka & Santa Fe Railway Company, which later merged with Burlington Northern Railroad Company to become the entity now known as BNSF Railway Company..

arbitration under the RLA. It seeks a declaration to that effect and a declaration that any strikes, work stoppages, or other forms of self-help by defendant violate section 3 of the RLA.

Defendant contends that plaintiff's offering of relocation incentives to employees it represents on the CB&Q and Frisco portions of plaintiff's property constitutes a unilateral change in working conditions that must be bargained for under the RLA. As a result, it seeks a declaration that the dispute is a "major" dispute, as well as a status quo injunction prohibiting plaintiff from continuing to implement the transfer incentive program on the CB&Q and Frisco portions before obtaining agreement from defendant, as required by sections 2 Seventh and 6 of the RLA. It also seeks make-whole injunctive relief for plaintiff's employees represented by defendant who are monetarily harmed by plaintiff's unilateral implementation of the transfer incentive program.

III.

The Legal Context

The case is governed by the RLA, which prescribes two distinct procedures for resolving labor disputes. The procedure to be followed in a particular dispute depends on whether the

dispute is "major" or "minor."[2] As the Supreme Court explained in Elgin, Joliet & Eastern Railway Company v. Burley, the category of major disputes

> relates to disputes over the formation of collective bargaining agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.

325 U.S. 711, 723 (1945), aff'd on reh'g, 327 U.S. 661 (1946).

A minor dispute, on the other hand,

> contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of those covered by the collective agreement, e.g., claims on account of personal injuries. In either case, the claim is to rights accrued, not merely to have new ones created for the future.

Id.

The parties to a major dispute must attempt to resolve the dispute through a lengthy process of bargaining and mediation.

---

[2] The RLA does not use the terms "major dispute" and "minor dispute." The Supreme Court in Burley coined those terms to describe which of the RLA's two dispute resolution procedures applies in a particular case.

Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 302 (1989). Until such process is complete, the parties have an obligation to maintain the status quo, meaning that the employer may not unilaterally implement the contested change in rates of pay, rules, or working conditions. Id. at 302-03. Only after the parties fail to reach an agreement through the required bargaining and mediation may the union resort to economic self-help. Id. at 303.

In contrast, minor disputes are subject to mandatory and binding arbitration before the National Railroad Adjustment Board or before an adjustment board established by the employer and union, which boards have exclusive jurisdiction over minor disputes. Id. at 303-04. Unlike in major disputes, the parties have no obligation to maintain the status quo pending arbitration of a minor dispute; rather, the employer may implement its interpretation of the disputed collective bargaining agreement until an arbitration board rules otherwise. Id. at 304. Absent extraordinary circumstances, a union may not engage in economic self-help over a minor dispute.

"The distinguishing feature of [a minor dispute] is that [it] may be conclusively resolved by interpreting the existing agreement." Id. at 305. Therefore, to determine whether a

6

dispute is major or minor, the court must first determine whether a claim has been made that "the terms of an existing agreement either establish or refute the presence of a right to take the disputed action." Id. If so, the court applies an arguable basis test: "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective bargaining agreement. Where, in contrast, the employer's claims are obviously insubstantial, the dispute is major." Id. at 307; Allied Pilots Ass'n v. Am. Airlines, Inc., 898 F.2d 462, 464 (5th Cir. 1990).

Under this test the court's role is not to interpret the parties' agreement, but merely to determine whether the case implicates a legitimate question of contract interpretation. Bhd. Ry. Carmen v. Mo. Pac. R.R. Co., 944 F.2d 1422, 1427 (8th Cir. 1991). If it does, the dispute is minor. The party arguing that the dispute is minor bears the burden of showing that its contractual claim is "arguably justified" or not "obviously insubstantial." Consol. Rail, 491 U.S. at 307.

IV.

The Dispute over Relocation Benefits Is a Minor Dispute

The court concludes that the dispute giving rise to this action is a minor dispute. None of the parties' collective bargaining agreements expressly addresses the issue of relocation incentives. Plaintiff claims that the right to offer them is a managerial prerogative, as indicated by the prior adjustment board decision and its sometime practice of offering such incentives without obtaining an agreement from defendant. Defendant claims that the adjustment board decision and plaintiff's past practices as to other portions of its property are irrelevant and that past practice on the CB&Q and Frisco has been for plaintiff to obtain defendant's agreement before offering such incentives. In other words, the dispute here is essentially a dispute over the effect the parties' past practices have on their current contractual relationship. See 491 U.S. at 315. It is a dispute to enforce rights the parties seem to agree have vested in the past, not one over rights to be acquired for the future. Id. at 302; Burley, 325 U.S. 723.

The evidence showing that plaintiff has treated the issue of relocation incentives as a managerial prerogative with respect to some portions of its property provides at least an "arguable"

8

basis for its claim that it has a managerial prerogative to offer such incentives to defendant's members on other portions of its property, including the former CB&Q and Frisco. Consol. Rail, 491 U.S. at 307. Just because plaintiff previously obtained defendant's agreement before offering relocation incentives on those portions does not mean that it could not have offered incentives without any such agreement. The prior adjustment board decision additional support for plaintiff's claim. Although an arbitration board may view things differently, plaintiff has carried its relatively light burden to show that its position is not "obviously insubstantial." See id.

Thus, this dispute must be submitted to an arbitration board as provided by section 3 of the RLA. Defendant is not entitled to the injunctive relief it seeks.

V.

Order

For the reasons given above,

The court DECLARES that the dispute involved in this action is a minor dispute subject to compulsory arbitration under

section 3 of the RLA, and ORDERS that all relief sought by defendant through its counterclaim be, and is hereby, denied.

SIGNED December 28, 2010.

_____
JOHN McBRYDE
United States District Judge